UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL A. ARGENTIERI, | Case No.  1:24-cv-00705 |
| Plaintiff, | |
| -against- | **NOTICE OF REMOVAL** |
| META PLATFORMS, INC. F/K/A/ FACEBOOK, INC., | |
| Defendant. | |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendant Meta Platforms, Inc. ("Defendant," "Meta," or "Facebook"), by and through its undersigned counsel, hereby removes the civil action entitled *Paul A. Argentieri v. Meta Platforms, Inc. f/k/a Facebook, Inc.*, Index No. 50711/2024, from the Supreme Court of the State of New York for the County of Allegany (the "Removed Action") to the United States District Court for the Western District of New York.  Grounds for removal are as follows:

## **INTRODUCTION**

1.      Plaintiff Paul Argentieri is well known to this Court.  He was the lawyer for Paul Ceglia, the con artist and convicted felon who forged a contract purporting to give him majority ownership in Facebook.  This Court determined that the contract was fake and that the lawsuit brought by Ceglia and Argentieri was a massive fraud on the court.  The Second Circuit affirmed.  During the pendency of these proceedings, federal prosecutors charged Ceglia in a multicount indictment for mail and wire fraud for having brought the fraudulent lawsuit.  Rather than accept responsibility for his crimes, Ceglia cut off his monitoring bracelet, fled the United States, and now is an international fugitive from justice.

2.      Argentieri escaped prosecution but continues to pursue the same fraudulent claims he and Ceglia manufactured more than a decade ago.  His latest scheme is the instant lawsuit, which claims that the fake contract was actually real—and that Facebook perpetrated a fraud on U.S. District Judge Arcara and U.S. Magistrate Judge Foschio by persuading them that it was not.

3.      Argentieri's lawsuit is untethered from reality and refuses to respect the decisions of this Court and the Second Circuit.  His lawsuit is subject to immediate dismissal on many grounds—collateral estoppel, statute of limitations, failure to serve, and failure to state a claim, among other reasons—and Meta will ask the Court for additional relief to halt Argentieri's continued abuse of the judicial process.

4.      It is no surprise that Argentieri filed his lawsuit in state court.  He does not want the United States District Court for the Western District of New York to continue exercising jurisdiction over these issues and this dispute because this Court has already determined years ago that Ceglia's forged contract was a fraud.

5.      Whether this Court has jurisdiction over this lawsuit is not a close question.  There are three separate and independent bases for federal jurisdiction.

6.      First, Argentieri's complaint arises under federal law.  Argentieri claims that Facebook perpetrated a fraud on the federal court by deceiving a U.S. District Judge and a U.S. Magistrate Judge into concluding that Ceglia's forged contract giving him ownership of Facebook was fake.  Because claims of fraud on the United States arise under and are governed by federal common law, this Court has federal question jurisdiction over this case.

7.      Second, this Court has inherent jurisdiction to determine whether it was in fact defrauded.  Indeed, the federal court's jurisdiction to make this determination is exclusive, as it would be bizarre and an affront to the constitutional structure for a state judge to conduct

proceedings and examine the decision-making process of a federal judge to determine if the federal judge had been defrauded—particularly where, as here, this Court *already* made those determinations more than a decade ago and found that it was *Ceglia*, not Defendant, that perpetrated a fraud on the court. *See Edwards v. Barclays Servs. Corp.*, 2020 WL 2087749, at *4 (S.D.N.Y. May 1, 2020) ("[A]n allegation that there has been 'fraud on the court' *must* be brought before the court that rendered judgment") (emphasis added), *report and recommendation adopted*, 2020 WL 3446870 (S.D.N.Y. June 24, 2020).

8.     Third, this Court may exercise diversity jurisdiction.  The parties are completely diverse and the amount in controversy easily exceeds $75,000.  Argentieri's complaint alleges a fraudulent scheme, dating back fourteen years, that has caused him to suffer reputational damages and incur attorneys' fees and other expenses to defend himself against a malicious prosecution claim.  He has previously alleged (in separate, dismissed litigation) that he suffered at least $25,000 from a single statement by *one* Facebook executive.  It is inconceivable that he is seeking less than $75,000 in damages in this case.

## PROCEDURAL BACKGROUND

9.     On May 21, 2024, Plaintiff served on Meta a summons with notice.  The summons with notice stated only that "this is an action under Fraud; Conspiracy to Commit Fraud; Scheme to Defraud; Fraudulent Interference of a Contract and Tort."  Ex. 2 at 1.

10.     On June 17, 2024, pursuant to CPLR 3012(b), Meta served Plaintiff with a demand for complaint, and filed affirmations of service on June 20, 2024.  Exs. 3 at 1, 4 at 1, 5 at 1.  Pursuant to CPLR 3012(b), Plaintiff had until July 22, 2024 to serve a complaint on Meta.

11.     On June 27, 2024, Plaintiff filed his Complaint against Meta—and a motion seeking voluminous, abusive discovery that he has repeatedly been denied in other actions, among other

things—with the Allegany court, but did not serve Meta.  On June 30, 2024, Plaintiff emailed the Complaint and motion to Gibson Dunn attorney Amanda Aycock, Esq., but Meta has never provided written consent to such email service.  To this day, Plaintiff has never properly served the Complaint on Meta, and indeed has never filed any proof of service.  His time to serve has now expired.

12.     Plaintiff's Complaint seeks to relitigate this Court's findings that his and Ceglia's 2010 lawsuit was a fraud on the court based on a fabricated document.  *See Ceglia v. Zuckerberg*, No. 10-CV-569, 2013 WL 1208558, at *4, *57,  (W.D.N.Y. Mar. 26, 2013) (dismissing action with prejudice as a fraud on the court in an exhaustive 155-page opinion finding that "clear and convincing evidence establishes the StreetFax Document is the authentic contract and the Work for Hire Document is a recently created fabrication" created "for the express purpose of filing the instant action"), *report and recommendation adopted*, 2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd*, 600 F. App'x 34 (2d Cir. 2015).[1]

13.     Plaintiff's Complaint alleges claims for so-called "fraud; conspiracy to commit fraud; fraudulent interference of a contract and tort."  Ex. 8 ("Compl.") at 3.  Specifically, Plaintiff alleges that Facebook "promoted" the "fraudulent factual arguments" that Ceglia's forged contract was itself fraudulent, including in the prior litigation in this Court.  Compl. ¶ 37; *see also*, *e.g.*, *id.* ¶¶ 39–40 (discussing Magistrate Judge Foschio's opinion); *id.* ¶ 117 (describing Facebook's alleged actions showing "intent to defraud").

---

[1]     Magistrate Judge Foschio also recommended, in the alternative, that Ceglia's case should be dismissed on grounds of spoliation of evidence.  *See Ceglia*, 2013 WL 1208558, at *73.  That alternative ground was also adopted by Judge Arcara, *see Ceglia*, 2014 WL 1224574, at *1, and affirmed by the Second Circuit, *see Ceglia*, 600 F. App'x at 37–38.

14.     The "harm" Argentieri alleges to have suffered appears, among other things, to be based on Facebook having commenced a malicious prosecution action against him in 2014.[2]  *See* Compl. ¶¶ 17(A)-(B), 112 (claiming Facebook's malicious prosecution action was based on a "fraud[ulent]" "[d]en[ial] of the authenticity" of the Work For Hire document).   In that case, Plaintiff complained that its "purpose" was to "injur[e]" him and "destroy[]" his "reputation," which Plaintiff proclaimed had previously been "excellent" and "completely unblemished."  *See* Ex. 43 (Compl. Ex. II) ¶ 25.  Plaintiff also complained that Facebook had "broadcast a release to the media accusing [him] of knowingly perpetrating a fraud upon the court."  *Id.*  Plaintiff thus sought to continue litigating that case "to vindicate [his] name and reputation."  *Id.*  And although Plaintiff represented himself, he also retained multiple lawyers from other firms who appeared on and signed pleadings.  *See* Ex. 41 (Compl. Ex. GG) at 20 (Plaintiff represented by Joseph M. Alioto of Alioto Law Firm and Gil D. Messina of Messina Law Firm, P.C.); Ex. 42 (Compl. Ex. HH) at 1

---

[2]     In October 2014, after the *Ceglia* matter had been dismissed by this Court, Facebook and Zuckerberg filed a lawsuit in New York Supreme Court against Ceglia's lawyers, including Argentieri, for malicious prosecution.  *See* Ex. 40 (Compl. Ex. FF).  That complaint alleged, *inter alia*, that the lawyers "conspired to file and prosecute a fraudulent lawsuit against Facebook and [Zuckerberg], based on fabricated evidence, for the purpose of extorting a lucrative and unwarranted settlement," and that they "knew or should have known that the lawsuit was a fraud." *Id.* ¶ 1.  While Argentieri answered the complaint, *see* Ex. 41 (Compl. Ex. GG), the other defendants moved to dismiss.  The Appellate Division ultimately dismissed the case as to the other defendants, holding that the plaintiffs had not sufficiently alleged that those defendants lacked probable cause for the proceeding.  *See Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610 (1st Dep't 2015); Compl. Ex. F.  The Appellate Division did not disturb any of this Court's findings in the *Ceglia* matter.  Facebook and Zuckerberg moved to voluntarily discontinue the action against Argentieri because it was no longer worth the time and expense of litigation.  Argentieri opposed, arguing that he should "have the opportunity to prove" that the lawsuit was "maliciously motivated and has caused me harm," that his "reputation" had been "scurrilous[ly] attack[ed]," and that he was entitled to take Zuckerberg's deposition.  *See* Ex. 43 (Compl. Ex. II) ¶ 29. Ultimately, however, the court dismissed the action on May 31, 2018.  *See* Ex. 45 (Compl. Ex. KK).

(notice of deposition signed by Gid D. Messina).  Plaintiff now seeks "damages . . . to be proven at trial." Compl. at 25.

15.    Plaintiff has sought treble damages and punitive damages for the same conduct in a nearly identical complaint filed against one of the law firms that represented Facebook in bringing the malicious prosecution lawsuit against Plaintiff, Ex. 52, and has represented to the Allegany Court that "the relief requested is virtually the same in both actions," Ex. 50 at 2.

## GROUNDS FOR REMOVAL

16.    This Court has multiple independent bases for jurisdiction.

## I.    This Court Has Federal Question Jurisdiction Over The Removed Action

17.    Plaintiff's Complaint flies in the face of what this Court has already determined, claiming that the Work For Hire document is the authentic contract between Ceglia and Zuckerberg, and that the StreetFax contract is a forgery.  From there, Plaintiff contends—in an upside-down fantasyland—that it was actually Defendant that defrauded Magistrate Judge Foschio and Judge Arcara during the *Ceglia* matter by denying the authenticity of the Work For Hire document, and insisting that the StreetFax contract was authentic.  *E.g.*, Compl. at 9, ¶¶ 17(A)-(B), 37, 117; *see also, e.g.*, *id.* ¶ 79 (alleging discovery was "fraudulently concealed" and "falsely represented" to the Court).

18.    Removal is appropriate here based on federal question jurisdiction, 28 U.S.C. §§ 1441, 1331, for two reasons.

19.    First, Argentieri's bizarre fraud and conspiracy to commit fraud claims arise under federal law: he is claiming that Facebook perpetrated a fraud *on this Court* by deceiving two federal judges into concluding that Ceglia's purported contract was fabricated.  Claims of fraud on federal courts are "governed by federal common law."  *See Shirokov v. Dunlap, Grubb & Weaver, PLLC*, 2012 WL 1065578, at *30 (D. Mass. Mar. 27, 2012).  As a result, this Court has federal question

jurisdiction over this case. *See*, *e.g.*, *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1151 (9th Cir. 2017) ("Questions of federal common law present a federal question that can serve as the basis of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331."); *Nordlicht v. New York Tel. Co.*, 617 F. Supp. 220, 223 (S.D.N.Y. 1985) (holding that because federal common law governed, "federal jurisdiction exists, and whatever claims plaintiff is raising are governed by federal, not state, common law"), *aff'd*, 799 F.2d 859 (2d Cir. 1986).

20.     Second, this Court has inherent power to determine whether it was in fact defrauded. *See*, *e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (federal courts' "inherent power" implicated when "offending parties have practiced a fraud upon the court"); *Ceglia*, 2013 WL 1208558, at *9 (Magistrate Judge Foschio invoking the "court's inherent power to protect itself from a disposition based on fraud"). Indeed, Plaintiff's allegations that this Court has been defrauded must be heard in *this Court*. *See Edwards*, 2020 WL 2087749, at *4 ("[A]n allegation that there has been 'fraud on the court' *must* be brought before the court that rendered judgment") (emphasis added). In fact, this Court has *already* determined that it was defrauded by Ceglia, *not* Defendant. It would make no sense, and would be contrary to basic principles of comity and federalism, for a state court to upend a federal court's prior determination that it had been defrauded.

21.     Accordingly, this Court has jurisdiction over the Removed Action, and the Removed Action may be, and hereby is, removed. Once removed, this Court would have supplemental jurisdiction under 28 U.S.C. § 1367 over any state common law tort claims, such as Plaintiff's claim for "fraudulent interference of a contract."

## II.     This Court Has Diversity Jurisdiction Over The Removed Action

22.     This Court also has diversity jurisdiction.   Removal is proper where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. §§ 1441, 1332(a).

### A.  There Is Complete Diversity Between Plaintiff and Meta

23.     Plaintiff alleges that he is a resident of New York.  Compl. ¶ 1.  Upon information and belief, Plaintiff is domiciled in New York and thus is a citizen of New York for diversity purposes.  *See Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011).

24.     Meta is a corporation incorporated in the State of Delaware with its principal place of business in Menlo Park, California.  *See*, *e.g.*, *Godwin v. CPF River Oaks Austin, L.L.C.*, 2024 WL 2732670, at *4 (W.D. Tex. May 28, 2024) ("Meta is a citizen of Delaware and California because it is incorporated in Delaware and maintains its principal place of business in California."); *Romero v. Meta Platforms, Inc.*, 2024 WL 1554826, at *1 (D.S.C. Mar. 14, 2024), *report and recommendation adopted*, 2024 WL 3466403 (D.S.C. July 19, 2024) ("Meta is a Delaware corporation, with a principal place of business in Menlo Park, California.").  Meta's officers "direct, control, and coordinate the corporation's activities" in California.  *Hertz v. Friend*, 559 U.S. 77, 92-93 (2010) (defining "principal place of business").  California is home to Meta's headquarters—its "nerve center," and the "actual center of direction, control, and coordination" for the company.  *Id.* at 93.  Meta is not incorporated in New York.  Meta is thus a citizen of both Delaware and California—not of New York.  *See* 28 U.S.C. § 1332 ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."); *see also Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1243 n.4 (W.D. Wash. 2016) (taking judicial notice of Meta (f/k/a Facebook) SEC filings to establish that Meta is a Delaware corporation with its principal place of

business in California).  Plaintiff's allegation that Meta is a "domestic corporation having its principal office located in New York City, State of New York" is simply wrong.  Compl. ¶ 2.

25.     Complete diversity of citizenship existed between Plaintiff and Defendant at the commencement of this action, and has existed at all times from that date until the filing of this Notice of Removal.

## B.  The Amount in Controversy Exceeds $75,000

26.     Under 28 U.S.C. § 1332(a), the amount in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs."  Although Plaintiff's claims for damages are utterly meritless, it is obvious that Plaintiff is seeking more than $75,000 in damages.  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

27.     Plaintiff's Complaint asserts "causes of action" against Meta for "fraud; conspiracy to commit fraud; fraudulent interference of a contract and tort," *see* Compl. at 3, based on his preposterous claims that the fabricated Work for Hire document was real, that Facebook allegedly defrauded a federal court by persuading them that it was not, and so purportedly committed fraud again when it brought the malicious prosecution lawsuit against him, *see* Compl. ¶ 17(A)-(B) (claiming that Facebook "litigated two primary" frauds, including "[d]enying the authenticity" of the Work For Hire document and "commenc[ing] . . . their lawsuit against Plaintiff"); *see also, e.g.*, *id.* ¶¶ 14-15, 18-33, 106.

28.     Plaintiff's Complaint seeks "damages . . . to be proven at trial," Compl. at 25, and does not identify any monetary amount—in a patently abusive attempt to evade this Court's jurisdiction.

29.     For multiple separate reasons, it is not only "plausible" that Plaintiff seeks more than $75,000 in damages, *Dart Cherokee Basin*, 574 U.S. at 89, it would be absurd to conclude that he is seeking less.

30.     First, Plaintiff's alleged damages arising from Facebook's malicious prosecution case alone—reputational damage, business damage, and out-of-pocket attorney's fees—amount to more than $75,000.  In that case, Plaintiff submitted a sworn affidavit seeking to *prolong* the litigation in opposition to Facebook's motion for voluntary discontinuance.  *See* Ex. 43 (Compl. Ex. II).  Plaintiff proclaimed that his "reputation with the bench and [his] colleagues in the Western New York area where [he] practice[d] was always excellent and [his] professional record [was] completely unblemished."  *Id.* ¶ 25.  Facebook's suit, he insisted, was filed "for the purpose of injuring [him] and destroying [his] reputation."  *Id.*  He thus demanded an opportunity "to vindicate [his] name and reputation."  *Id.*  The supposed damage to Plaintiff's reputation and business alone plausibly exceeds $75,000.  And it hardly stands alone.  Plaintiff also incurred attorney's fees to defend himself in that suit—in addition to representing himself, Plaintiff retained other attorneys from other firms.  *See* Ex. 41 (Compl. Ex. GG) at 20; Ex. 42 (Compl. Ex. HH).

31.     Second, Plaintiff's prior conduct and allegations in his dismissed defamation action against Facebook further confirm that the amount in controversy here is greater than $75,000.  In that dismissed defamation action, which sought damages for a *single statement* by one Meta executive about him,[3] Plaintiff claimed similar injuries as he is claiming here—to his "reputation,

---

[3] During the pendency of Facebook's malicious prosecution action against Argentieri, Argentieri filed a defamation suit against Facebook, Zuckerberg, and another Facebook executive in California state court.  *See Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768 (2017).  Argentieri alleged that a statement that the executive had made to the press about the malicious prosecution action and the defendants' knowledge of Ceglia's fraud was defamatory.  The court granted defendants' motion to dismiss the action, and the appellate court affirmed on February 15, 2017.  *See id.* at 772.

shame, mortification, and hurt feelings," and to "his property, business, trade or profession." Ex. 53 ¶¶ 26, 28. Although he was not required to allege a specific amount of damages, he admitted in the civil cover sheet for that action that his damages amount exceeded the jurisdictional minimum of $25,000 in damages, plus punitive damages. *Id.* at 2; *see also, e.g.*, *Ytuarte v. Superior Court*, 129 Cal. App. 4th 266, 274-75 (2005) (discussing jurisdictional thresholds). If, in the defamation suit, a *single statement* uttered by one Meta executive allegedly caused Plaintiff at least $25,000 in damages, then the purported damages caused by a years-long lawsuit over the same subject matter would be many multiples of that—and certainly more than $75,000.

32.     Third, Plaintiff expressly seeks "treble damages" and "punitive damages" in his ongoing litigation against one of the law firms that represented Facebook in bringing the malicious prosecution lawsuit against him, and he has represented here that "the relief requested is virtually the same in both actions." Ex. 50 at 2. Those forms of damages, too, put the amount-in-controversy requirement beyond dispute here.

33.     It is inconceivable that Plaintiff—who at this point has devoted much of the last decade-plus of his professional life to trying to extract money from Facebook based on these fabricated documents—is currently suing for less than $75,000.

34.     Accordingly, this Court has jurisdiction over the Removed Action, and the Removed Action may be, and hereby is, removed.

## COMPLIANCE WITH REMOVAL PROCEDURES

35.     Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Western District of New York is the proper place to file this Notice of Removal because it is the district court for the federal district embracing the place where the Removed Action was filed.

36.     As required by 28 U.S.C. § 1446(a) and the local rules, copies of all documents filed and/or served in the Removed Action are attached to this Notice of Removal at Exhibits 1-51.[4]

37.     This Notice of Removal is timely under 28 U.S.C. § 1446(b) because the Complaint has not yet been served on Meta.  On June 27, 2024, a copy of Complaint was filed in the Supreme Court of the State of New York, County of Allegany.  Out of an abundance of caution, this Notice of Removal is being filed within 30 days of June 27, 2024.

38.     Pursuant to the provisions of 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal in this Court, Meta will (i) give written notice thereof to Plaintiff; and (ii) file a copy of this Notice of Removal with the Clerk of the Supreme Court of New York, County of Allegany, effectuating the removal.

39.     By filing this Notice of Removal, Meta does not waive any claim, argument, or defense which may be available to it.

40.     Meta reserves the right to amend or supplement this Notice as may be appropriate.

## **CONCLUSION**

41.     For the foregoing reasons, the Removed Action is hereby removed to the United States District Court for the Western District of New York.  Meta respectfully requests that the Court enter such orders and grant such other and further relief as may be necessary to effectuate the removal.

---

[4] Included in these documents is correspondence with the Allegany court that was not otherwise filed.  *See* Ex. 50.  And as noted above, Meta has never been properly served with Plaintiff's Complaint or motion.

Dated: Buffalo, New York
July 29, 2024

Respectfully submitted,


Thomas H. Dupree, Jr.*
Jacob T. Spencer*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
tdupree@gibsondunn.com
jspencer@gibsondunn.com

/s/ Terrance P. Flynn
Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120
tflynn@harrisbeach.com

Matthew J. Benjamin*
Amanda M. Aycock*
Timothy Sun
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000
mbenjamin@gibsondunn.com
aaycock@gibsondunn.com
tsun@gibsondunn.com


*Attorneys for Defendant*
*Meta Platforms, Inc.*


*Pro hac vice forthcoming*

### ndex of Documents Served and/or Filed in State Court and Other Exhibits

| Ex. | Date Filed | Description |
|-----|------------|-------------|
| 1. | 05/17/2024 | Title of Action or Proceeding |
| 2. | 05/17/2024 | Summons with Notice |
| 3. | 6/13/2024* | Demand for Complaint |
| 4. | 06/20/2024 | Affirmation of Service of Demand for Complaint |
| 5. | 06/20/2024 | Affirmation of Mailing of Demand for Complaint |
| 6. | 06/27/2024 | Affidavit of Service of Summons with Notice Through the Secretary of State |
| 7. | 06/27/2024 | Affidavit of Service of Summons with Notice |
| 8. | 06/27/2024** | Verified Complaint |
| 9. | 06/27/2024 | Exhibit A to Verified Complaint |
| 10. | 06/27/2024 | Exhibit B to Verified Complaint |
| 11. | 06/27/2024 | Exhibit C to Verified Complaint |
| 12. | 06/27/2024 | Exhibit D to Verified Complaint |
| 13. | 06/27/2024 | Exhibit E to Verified Complaint |
| 14. | 06/27/2024 | Exhibit F to Verified Complaint |
| 15. | 06/27/2024 | Exhibit G to Verified Complaint |
| 16. | 06/27/2024 | Exhibit H to Verified Complaint |
| 17. | 06/27/2024 | Exhibit I to Verified Complaint |
| 18. | 06/27/2024 | Exhibit J to Verified Complaint |
| 19. | 06/27/2024 | Exhibit K to Verified Complaint |
| 20. | 06/27/2024 | Exhibit L to Verified Complaint |
| 21. | 06/27/2024 | Exhibit M to Verified Complaint |

| Ex. | Date Filed | Description |
|-----|-----------|-------------|
| 22. | 06/27/2024 | Exhibit N to Verified Complaint |
| 23. | 06/27/2024 | Exhibit O to Verified Complaint |
| 24. | 06/27/2024 | Exhibit P to Verified Complaint |
| 25. | 06/27/2024 | Exhibit Q to Verified Complaint |
| 26. | 06/27/2024 | Exhibit R to Verified Complaint |
| 27. | 06/27/2024 | Exhibit S to Verified Complaint |
| 28. | 06/27/2024 | Exhibit T to Verified Complaint |
| 29. | 06/27/2024 | Exhibit U to Verified Complaint |
| 30. | 06/27/2024 | Exhibit V to Verified Complaint |
| 31. | 06/27/2024 | Exhibit W to Verified Complaint |
| 32. | 06/27/2024 | Exhibit X to Verified Complaint |
| 33. | 06/27/2024 | Exhibit Y to Verified Complaint |
| 34. | 06/27/2024 | Exhibit Z to Verified Complaint |
| 35. | 06/27/2024 | Exhibit AA to Verified Complaint |
| 36. | 06/27/2024 | Exhibit BB to Verified Complaint |
| 37. | 06/27/2024 | Exhibit CC to Verified Complaint |
| 38. | 06/27/2024 | Exhibit DD to Verified Complaint |
| 39. | 06/27/2024 | Exhibit EE to Verified Complaint |
| 40. | 06/27/2024 | Exhibit FF to Verified Complaint |
| 41. | 06/27/2024 | Exhibit GG to Verified Complaint |
| 42. | 06/27/2024 | Exhibit HH to Verified Complaint |
| 43. | 06/27/2024 | Exhibit II to Verified Complaint |

| Ex. | Date Filed | Description |
|---|---|---|
| 44. | 06/27/2024 | Exhibit JJ to Verified Complaint |
| 45. | 06/27/2024 | Exhibit KK to Verified Complaint |
| 46. | 06/27/2024 | Exhibit LL to Verified Complaint |
| 47. | 06/27/2024 | Exhibit MM to Verified Complaint |
| 48. | 06/27/2024 | Exhibit NN to Verified Complaint |
| 49. | 06/27/2024** | Notice of Motion |
| 50. | 07/03/2024*** | Email from Miranda Forshee, Deputy Chief Clerk Allegany Supreme & County Courts, to Paul Argentieri and Amanda Aycock, Attaching Letter from Paul Argentieri to Hon. Thomas P. Brown |
| 51. | 07/03/2024 | Request for Judicial Intervention |
| | | |
| 52. | 04/19/2024 | *Argentieri v. Moskowitz*, Verified Complaint |
| 53. | 10/19/2015 | *Argentieri v. Zuckerberg*, Verified Complaint |

**\* Not filed, but was served on Plaintiff**

**\*\*A version of this was emailed by Plaintiff to Gibson Dunn on June 30, 2024**

**\*\*\*Date sent**